1  GABRIEL A. JACKSON, State Bar No. 98119
   Email: gajackson@jjr-law.com
2  JAMES J. O'BRIEN, State Bar No. 238534
   Email: jbrien@jjr-law.com
3  JACKSON JENKINS RENSTROM LLP
   55 Francisco Street, 6th Floor
4  San Francisco, CA 94133
   Tel:   415.982.3600
5  Fax:   415.982.3700

6  Attorneys for Defendant
   GENERAL DYNAMICS CORPORATION
7

8
                    UNITED STATES DISTRICT COURT
9
                    EASTERN DISTRICT OF PENNSYLVANIA
10

11
   | IN RE: ASBESTOS PRODUCTS | MDL DOCKET NO. 875 |
   |---|---|
   | LIABILITY LITIGATION (NO. VI) | Case No. 2:10-cv-64595-ER |
   | CHARLES AIKINS, | **GENERAL DYNAMICS CORPORATION'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
   | Plaintiffs, | |
   | v. | |
   | GENERAL ELECTRIC COMPANY, et al., | Date: December 12, 2011 |
   | | Time: 10:00 a.m. |
   | Defendants. | Courtroom: Hon. Eduardo C. Robreno |

# TABLE OF CONTENTS

Page No.

I. ARGUMENT ........................................................................................................................... 1

    A. General Dynamics Is A Government Contractor ................................................... 1

    B. Navy Vessels are Military Equipment .................................................................... 3

    C. A Significant and Irreconcilable Conflict with State Law Exists Herein ............... 5

        1. *General Dynamics Built the Navy Vessels Pursuant to Contract* ............... 5

        2. *A Conflict Exists Between General Dynamics' Obligation to Build Vessels Precisely to Government Specifications and a State Law Duty That Would Require Deviation from the Specifications* ..................... 5

    D. The Boyle Elements are Met Because General Dynamics has Demonstrated that Any Work That Was Performed To A General Dynamics' Ship Was Performed Pursuant to Reasonable Precise Specifications, The Work Conformed to Those Specifications, and the Navy was Aware of Asbestos Hazards Prior to 1969 .............................................................................................. 9

    E. General Dynamics had no Duty to Warn the Navy about the Hazards of Asbestos that the Navy Already Knew of at the Time of the Exposure ................ 10

    F. The Declarations of Plaintiff Charles Ay and Herman Brush Are Inadmissible ............................................................................................................ 12

II. CONCLUSION ..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page**

**Cases**
Dorse v. Eagle-Picher Indus., Inc., 898 F.2d1487 (11th Cir. 1990) .................................. 6, 7
Faddish v. General Electric Co., 2010 WL 4146108 (E.D.Pa.), ....................................... 7
Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003 (7th Cir. 1996) .................................. 7
Priebe & Sons, v. U.S., 332 U.S. 407 (1947) ..................................................................... 2
Tate v. Boeing Helicopters, 55 F.3d 1150 (6th Cir. 1995) ................................................ 6
U.S. v. Bethlehem Steel, 315 U.S. 289 (1942) .................................................................. 2
U.S. v. Cowden Mfr.,
   312 U.S. 34 (1941) ........................................................................................................ 2
U.S. v. Kansas Flour Mills,
   314 U.S. 212 (1941) ...................................................................................................... 1
U.S. v. Newport News Shipbuilding,
   178 F. 194 (1910) .......................................................................................................... 2
U.S. v. Standard Rice Co., 323 U.S. 106 (1944) ............................................................... 1
United States v. Tingey, 30 U.S. 115 (1831) .................................................................. 1, 4

**Statutes**
2305(a)(1)(A)(i)-(iii), ......................................................................................................... 2
2305(a)(2), ......................................................................................................................... 2
Fed. R. Civ. P. 56 (e)(2). ................................................................................................... 8

**Other Authorities**
FPASA, 41 U.S.C. 251 ...................................................................................................... 2
In re: Hawaii Federal Asbestos Cases, 920 F. 2d 806 (9th Cir. 1992) .............................. 3
of Titles 10, 31, 40 and 41 of the United States Code, ..................................................... 2

# I. ARGUMENT

### A. General Dynamics Is A Government Contractor

Despite plaintiff's near admission that military vessels cannot be built without a contract with the government, plaintiff nevertheless argues that General Dynamics is not entitled to raise the government contractor defense because no contract to construct these Navy vessels was submitted in the moving papers. That the vessels were built pursuant to contract is a fact that cannot reasonably be questioned and General Dynamics requests that the court take judicial notice that the vessels at issue were built and procured pursuant to contract with the United States government.[1] Indeed, no evidence is submitted by plaintiff to the contrary and General Dynamics submits that no such authority exists. A review of more than 200 years of jurisprudence is instructive.

The power of the United States of America to procure property for the United States Navy dates at least as far back as the Constitution itself. See, for example, United States Constitution, Article 1, Section 8: "The Congress shall have Power …. To provide and maintain a Navy." As a sovereign entity, the United States of America has the inherent authority to contract to discharge governmental duties. United States v. Tingey, 30 U.S. 115 (1831) ["The United States have in his political capacity a right to enter into a contract, or to take a bond in cases not previously provided by law. It is an incident to the general right of sovereignty…"].

Given this power to contract, and prior to the strict statutory guidelines regarding government contracts discussed below, the United States entered into contracts for everything from rice (U.S. v. Standard Rice Co., 323 U.S. 106 (1944)), flour (U.S. v. Kansas Flour Mills, 314 U.S. 212 (1941)), dried eggs (Priebe & Sons v. U.S., 332 U.S. 407 (1947)), and mechanic's suits (U.S. v. Cowden Mfr., 312 U.S. 34 (1941)), to Navy vessels (U.S. v. Bethlehem Steel, 315 U.S. 289 (1942))[2] ; U.S. v. Newport News Shipbuilding, 178 F. 194 (1910)).[3]

---

[1] Federal Rule of Evidence 201(b): "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" and FRE 201(f): "Judicial notice may be taken at any stage of the proceeding."

[2] In discussing the government contracts which the shipbuilder claimed unconscionable, the court stated: "[t]he

1

The federal common law relating to procurement that arose out of the Constitution is voluminous, and the excruciating detail that goes into procuring a Navy vessel and other military property was codified at least as early as the Armed Services Procurement Act of 1947 ("ASPA"), 10 U.S.C. 2302, et seq., and thereafter further refined in the Federal Property and Administrative Services Act of 1949 ("FPASA"), 41 U.S.C. 251, et. seq., the Competition in Contracting Act ("CICA"), codified in various sections of Titles 10, 31, 40 and 41 of the United States Code, and ultimately culminating in the current Federal Acquisition Regulations ("FAR") and the Defense Federal Acquisition Regulations ("DFAR").[4]

To be more specific, 10 U.S.C. 2305 of the ASPA entitled "Contracts: planning, solicitation, evaluation, and award procedures," among numerous other sections, provides the framework for the contracting process including: government issuance of needs, research and specifications, (Id. at 2305(a)(1)(A)(i)-(iii)), solicitation of bids, (Id. at 2305(a)(2)), an evaluation process, (Id. at 2305(b)), a review by the Secretary of Defense, (Id. at 2305(c)-(d)), and award of the contract. Id. at 2305(b)(4)(C). The FPASA, 41 U.S.C. 251, et seq., then specifies the contracting procedures for procuring property and services, including competition requirements for solicitation of contracts, (Id. at 253), authority to enter into contracts, (Id. at 2531), and contract requirements. Id. at 254. CICA added that government contracts awards require full and open competition. See, for example, 10 USC 2304: "[c]ontracting officers shall promote and provide for full and open competition in soliciting offers and awarding Government contracts." Parts 1-53 of FAR and the related DFAR Supplement to the FAR, supra, then combine the collective contracting requirements developed throughout American history into an extensive set

---

contracts were negotiated and executed in 1917 and 1918, when Germany's destructive warfare against our ocean shipping essential to the successful prosecution of the war made it necessary for the United States to build the greatest possible number of ships in the shortest possible time. They are typical products of a system of procurement heavily relied upon by the United States Shipping Board Emergency Fleet Corporation and other government purchasing agencies at the time." U.S. v. Bethlehem Steel, 315 U.S. 289, 292 (1942).
[3] Wherein the Court of Appeal upheld trial court's conclusion that the Navy is liable for additional costs related to sea trials of the CHARLESTON not contemplated by the shipbuilder during the contracting phase. See, generally, U.S. v. Newport News Shipbuilding, 178 F. 194 (1910).
[4] Given that the contracting process consists of literally tens of thousands of pages of Code and regulations, for the purposes of brevity and judicial economy only certain portions of these regulations will be discussed here. Defendant is prepared to submit further briefing on this subject should the court desire.

2

1 of statutes that govern the government contracting process and acquisitions by the Department of
2 Defense.
3       The Declaration of Admiral Sargent, submitted with the moving papers, also goes into
4 incredible detail with regard to the procurement of these Navy vessels, including the contracting
5 phase. (Sargent Declaration, at Paragraph 23, et. seq.; See also, generally, the Declaration of
6 Admiral Horne, submitted with the moving papers).
7       Accordingly, it is indisputable that Navy vessels, including the ones at issue here, are now
8 and always have been built pursuant to contract with the United States of America. To
9 commission and obtain a Navy vessel absent a contract would exceed the powers given the
10 government by the Constitution and would be a plain violation of hundreds of years of federal
11 common law and strict statutory guidelines.
12       Turning Plaintiff's argument on its head, if General Dynamics is not a government
13 contractor, the natural consequence is that General Dynamics did not build the vessel that
14 Plaintiff boarded since such construction could not have occurred and the claims fail. As the
15 Navy's procurement of these Navy vessels is not in dispute, General Dynamics is entitled to raise
16 the government contractor defense.

17   **B.**    **Navy Vessels are Military Equipment**
18       Plaintiff asserts the vessels manufactured by General Dynamics are not military
19 equipment. Plaintiff argues that there is no evidence regarding the procurement of said vessels by
20 the military, or that the vessels were designed with specific consideration for a military purpose.
21 Instead, Plaintiff maintain that General Dynamics "products" were first produced for and sold to
22 the general market and that only incidentally did its products fit government specifications. (See
23 Plaintiff's Memorandum in Opposition, Section B(2)., pp. 16:10-22:20).
24       Contrary to these allegations, military warships are military equipment and members of
25 the general public are not able to purchase combat-ready military vessels at the local market. As
26 stated in Defendant's moving papers, the case of <u>In re: Hawaii Federal Asbestos Cases</u>, 920 F. 2d
27 806 (9th Cir. 1992) is inapplicable to the matter herein for the obvious and indisputable reason
28 that military warships like the ones at issue herein are not commercially available products.

3

Indeed, pursuant to the International Traffic in Arms Regulations, 22 CFR 121.1 ("The United States Munitions List"), the vessels at issue are designated by the United States government as Defense Articles and "Significant Military Equipment" (Category VI(a), "Vessels of War"). By his very nature, the vessels cannot be sold to the public and private ownership of these Defense Articles would lead to very serious consequences to the owner. Pursuant to the International Trafficking in Arms Regulations, and the government's own designation of these ships as Military Equipment therein, General Dynamics requests that the Court take judicial notice that the vessels at issue are in fact military equipment. FRE 201(b).

As already demonstrated in the moving papers, the reason that the product manufacturers at issue in In re Hawaii, supra, were not allowed to raise the government contractor defense is because their products are available on the open market and do not involve the reasoned judgment of the Navy in the design process. Specifically, the court found that the products "have not been developed on the basis of involved judgments made by the military but in response to the broader needs and desires of end-users in the private sector." Id. at 811.

Again, a private consumer cannot purchase a Navy warship. The needs of "end-users in the private sector" are not a concern when the Navy issues detailed specifications that private shipyards, including General Dynamics, are required to follow. General Dynamic's sole customer -- the United States Navy -- is intimately involved in and directs judgments related to the construction and repair of its nuclear submarines and these judgments are made because the Navy must ensure that combat-ready vessels are at all times protecting our borders.

More recently, in Getz v. Boeing, CCH Prod. Liab. Rep. P18, 681; 2011 U.S. App. LEXIS 15877 (2011), the court of appeal expressly rejected plaintiffs' argument that the government contractor defense was unavailable pursuant to In re: Hawaii because the government did not forbid warnings. Getz, CCH Prod. Liabl. Rep. at p. 32; 322011 U.S. App. Lexis 158777. "To read these cases as limiting preemption to those instances where the government forbids additional warnings would be inconsistent with the Court's decision in Boyle." Id. See also In Re: Hawaii, 960 F.2d at 813 and Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 585 (9th Cir. 1996).

Moreover, despite mere allegations to the contrary, Defendant has submitted an

4

abundance of evidence regarding the procurement of its vessels by the United States Navy. The declaration of Admiral Sargent provides a detailed explanation regarding the design, construction and procurement of Navy warships, including the use of military specifications. (See Exhibit E to the O'Brien Decl., at ¶¶ 17-35). Plaintiff, on the other hand, has not produced any evidence to support the contention that the vessels herein are not military equipment or that they were first produced for and sold to the general market. Similarly, there is no evidence regarding Plaintiff's alleged exposure to any other product for which Defendant can be held liable other than the vessels at issue herein. As such, Plaintiff's assertion that Defendant's vessels are not military equipment fails.

C. **A Significant and Irreconcilable Conflict with State Law Exists Herein**

Plaintiff avers that there is no evidence that General Dynamics was explicitly told or instructed by the United States Navy not to warn of asbestos. Plaintiff also asserts that the Uniform Labeling Act is evidence that they Navy required Defendant to place warnings on its products. Plaintiff's argument is misleading, without any foundation and simply ignores the evidence before the court.

1. *General Dynamics Built the Navy Vessels Pursuant to Contract*

Preliminarily, and as discussed above, all Navy vessels, including the ones at issue here, are now and always have been built pursuant to contract with the United States of America. Furthermore, the documents and contracts regarding the construction of the vessels at issue herein are controlled by various federal statutes and Defendant is subject to strict government regulations regarding the disclosure of the information contained in the documents. However, Defendant has offered the testimony of its experts Admirals Horne and Sargent as evidence of the Navy's requirements and instructions regarding the design and construction of the vessels, including the use of warnings. (See Exhibits D and E to the O'Brien Decl.)

2. *A Conflict Exists Between General Dynamics' Obligation to Build Vessels Precisely to Government Specifications and a State Law Duty That Would Require Deviation from the Specifications*

The appellate court in Tate v. Boeing Helicopters, 55 F.3d 1150 (6th Cir. 1995), created

an alternative test to Boyle when applying the government contractor defense in the context of state-based failure to warn claims: "When state law would otherwise impose liability for a failure to warn of dangers in using military equipment, that law is displaced if the contractor can show: (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not." Id. at 1157.

Relying on the case of Dorse v. Eagle-Picher Indus., Inc., 898 F.2d 1487 (11th Cir. 1990), Plaintiff avers that Defendant has not presented evidence that there was a government directive specifically prohibiting a warning from being placed on Defendant's vessels regarding the hazards of asbestos, and as such, Defendants could have issued a warning regarding the hazards of asbestos. Accordingly, Plaintiff asserts that Defendant is not entitled to the government contractor defense to his failure to warn claims. However, Plaintiff's argument in this regard fails.

First, Plaintiff's reliance on the Dorse case is misplaced. As correctly noted by this court in the matter of Faddish v. General Electric Co., 2010 WL 4146108 (E.D.Pa.), the "standard articulated by the Eleventh District in Dorse has been rejected by every Circuit court to consider the issue, as well as district courts in this circuit." Instead, a government contractor is not required to show an express government prohibition on warnings, but rather, must establish that the US Navy exercised its discretion regarding warnings on Defendant's ships. Id. at 9; see also, Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003 (7th Cir. 1996), cert. denied 520 U.S. 1116, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1997).

Moreover, Defendant has established that the government exercised its discretion regarding the use of warnings in the construction of Navy nuclear vessels. For example, Admiral Sargent has testified that the technical specifications referenced in the procurement documents for equipment have, since at least the 1940s, included detailed requirements regarding all written materials supplied with equipment supplied to the Navy. Defendant has shown that the applicable specifications included strict instructions regarding the labeling of and packaging of the

6

components themselves, and for all technical documentation that was procured with them. The Navy had precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by Original Equipment Manufacturers (OEMs) for ultimate use aboard Navy ships. OEMs, would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy. (See Exhibit E to the O'Brien Decl., at ¶¶ 47-48).

Further, Admiral Sargent's affidavit outlines how Navy personnel participated intimately in the preparation and review of instruction books and technical manuals in a standardized format used by the Navy. These manuals included safety information to the extent – and only to the extent – directed by the Navy. Admiral Sargent further explains how manufacturers of components and equipment were not permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to include any type of warning or caution statement in instruction books or technical manuals, beyond those required and approved by the Navy without prior discussion and approval by the Navy. The Navy dictated, reviewed and approved the contents of all technical manuals, including any cautionary language or emphasis. The Navy approached this process for review and approval of technical manuals in an exacting manner. It often created lengthy memoranda detailing word-by-word line edits to the content of technical manuals submitted for approval, including the wording of instructional material and warnings. The reasons for the Navy's detailed control over and review and approval of all written communication regarding equipment it procured was to ensure consistency of that information with the overall goals and priorities of the Navy in its operations. (See Exhibit E to the O'Brien Decl., at ¶¶ 49-51).

Admirals Sargent and Horne further explained how uniformity and standardization of any communication, particularly safety information, are critical to the operation of the Navy and Navy ship and that the Navy could simply not operate safely and effectively if personnel were trained

7

differently, using inconsistent information received from different manufacturers. If every equipment, structural steel and pipe manufacturer were allowed to decide on the need for, and provide its own safety and heath warnings (including those concerning asbestos insulation that might be used on or around its product), inconsistent warnings would certainly have resulted. If each were to warn about all the possible substances that might be used on or around its equipment, sailors would quickly become inundated with inconsistent information on a myriad of substances. Therefore, the Navy's detailed specification of what warnings were required, both on equipments and in technical documentation, was logical and necessary. The Navy would not have permitted equipment suppliers to place asbestos-related warnings on packaging or containers for equipment or related parts or items supplied during the 1940s through at least the 1970s. Similarly, the Navy would not have permitted equipment suppliers to place asbestos-related warnings in any literature or documentations supplied with equipment for Navy ships in the 1940s through the 1970s.

       No private contractor, such as Defendant, could have affixed a written warning anywhere aboard an active duty naval warship during its construction or repair, advising the risk of asbestos exposure. To do so without the Navy's express approval would be a deviation from the detailed and specific instructions mandated by the Navy. The Navy's detailed specifications did not leave room for individual vendors to make determinations about inclusion of asbestos warnings. (See Exhibit E to the O'Brien Decl., at ¶¶ 51-53).

       Plaintiff has produced no evidence to support his mere allegations to the contrary. Plaintiff, as the non-moving party, may not merely rely on allegations in his own pleadings, and rather must, by affidavits or as otherwise provided by the Rules of Civil Procedure, set out specific facts showing a genuine issue for trial. See Fed. R. Civ. P. 56 (e)(2). Plaintiff clearly has not submitted any affidavits or other evidence to contradict the testimony of Admirals Sargent and Horne, and Plaintiff will never be able to do so.

       Defendant herein has established that the United States Navy exercised its discretion regarding warnings that could and could not be placed on products it procured from outside contractors. The affidavits of Defendant's experts accurately recite the process by which the

8

United States Navy controlled every detail in the construction of its warships through the use of precise specifications, including specifications governing the placement of warnings on the products it procured from outside contractors. Both Admirals Horne and Sargent have explained that outside contractors were required to exactly adhere to the Navy's precise specifications about warnings, and were not permitted to place any warning on its product, including a warning regarding asbestos, without the Navy's express permission. As stated, Plaintiff will never be able to produce any evidence to the contrary as his allegation that government contractors such as Defendant herein could have placed warning on its vessels regarding the hazards of asbestos is simply false.

D. **The Boyle Elements are Met Because General Dynamics has Demonstrated that Any Work That Was Performed To A General Dynamics' Ship Was Performed Pursuant to Reasonable Precise Specifications, The Work Conformed to Those Specifications, and the Navy was Aware of Asbestos Hazards Prior to 1969.**

In its underlying motion for summary judgment, General Dynamics established that : 1) All work performed aboard vessels built by General Dynamics for delivery to the United States Navy was done pursuant to comprehensive plans, specifications and requirements issued by the government, and Navy officers insured that the shipbuilding conformed to those specifications and requirements so as to ensured that the ships are reliable and combat ready and to protect lives. (See Exhibit D to the O'Brien Decl. at ¶¶ 12-18); 2) To ensure readiness for combat, the Navy cannot tolerate deviations from specifications. (Id.); 3) Any work performed by General Dynamics had to comply with these specifications and conform to them. (Id.; see also Exhibit E to the O'Brien Decl. at ¶¶ 54-65); and 4) the US Navy knew of health hazards associated with asbestos in the 1960's and prior to the time that Decedent worked aboard ships allegedly manufactured by General Dynamics. Numerous Navy documents concerning asbestos health hazards existed at least as early as the 1960's and the subject was discussed at Navy meetings in the early 1960's, which Admiral Horne has personal knowledge of. (See Exhibit D to O'Brien Decl. at ¶¶ 24-28). These undisputed facts precisely meet the Supreme Court's interpretation of the government contractor defense - namely, the Boyle elements are satisfied and the government contractor defense is established as a matter of law.

9

Admiral Horne's and Admiral Sargent's testimony establishes that the United States approved reasonably precise specifications for the construction and repair of its vessels. Plaintiffs submit no evidence to oppose this testimony. Rather, Plaintiffs simply dismiss Admiral Horne's declaration as generic. In fact, Admiral Horne's testimony in this case is that he has personal knowledge that the United States Navy dictated every aspect of the design manufacture, installation, overhaul, written documentations and warning associated with its ships, and that the Navy did not permit any deviations from its contracts. (See Exhibit D to O'Brien Decl. at ¶5.) Admiral Horne testified further that if any asbestos-containing products were used aboard the ships built for the US Navy, their use was pursuant to and mandated by specific requirements of the Navy. (Id. at ¶ 13.) Admiral Horne has a 35-year long career with the United States Navy; and during this time he was responsible for maintaining naval ship military specifications and monitoring compliance therewith. (Id. at ¶¶ 1, 3.) Admiral Horne is knowledgeable with respect to the United States' approval of reasonably precise specifications for the construction and repair of US naval vessels. Plaintiff's attempts at dismissing this expert's statements are hollow, unsupported, speculative and should not be countenanced by the Court.

With respect to General Dynamics's conformance with the Navy's specifications, as noted in General Dynamics's underlying papers, the government's acceptance and continued use of equipment is itself enough to show that it conformed to government specifications. See Niemann v. McDonnell Douglas Corp. (S.D. Ill 1989) 721 F. Supp. at 1027. Therefore, there is no question of fact with respect to the United States approval of reasonably precise specifications for the construction and repair of its naval vessels, and that General Dynamics's work at all times conformed to those specifications.

### E. General Dynamics had no Duty to Warn the Navy about the Hazards of Asbestos that the Navy Already Knew of at the Time of the Exposure

With respect to Boyle's third prong, General Dynamics has demonstrated that the U.S. Navy was well aware of the hazards of asbestos during the time frame at issue herein. Plaintiffs' opposition is based on the erroneous conclusion that General Dynamics knew about the hazards

of asbestos in the 1950's and therefore the Boyle defense is not available. This argument is irrelevant and fails. Even if the court were to assume, *arguendo,* that General Dynamics had superior knowledge to the Navy in the 1950's, which plaintiffs have produced no evidence of, General Dynamics certainly did not have superior knowledge to the Navy as of 1969. As made perfectly clear by Admiral Horne, the Navy was well aware of the hazards associated with the inhalation of asbestos prior to 1969. When the government is ignorant of hazards associated with work being performed pursuant to a government contract, Boyle and its progeny require that those contracting with the government must warn of those hazards. Nowhere does Boyle require a continuing obligation to warn the Navy of hazards after the Navy was aware of such hazards. No case is found to suggest that the Navy must continually be reminded about that which it already knows. Obviously the Supreme Court is not engaged in idle acts, yet plaintiffs' reading of the government contractor defense would nevertheless render the Supreme Court's third element of Boyle superfluous. Such a reading would require warning the government about every hazard in every instance irrespective of whether the government was aware of the hazard at the time of the incident.

The recent opinion by the Ninth Circuit in Getz v. Boeing, supra, is instructive. In that case an Army Special Operations Chinook MH-47E helicopter crashed in Afghanistan, killing the soldiers onboard. The cause of the crash was determined to be an engine flameout created by an onboard computer system which controlled engine fuel flow. In affirming summary judgment in favor of the helicopter manufacturer and the component part manufacturer on the government contractor defense, the Court of Appeals found that the first two elements of Boyle were met and then turned to the third element relating to knowledge of the hazard, wherein the court stated: "[w]ith respect to the potential for water- or ice-induced flameout, it is clear that **the Army was already aware of this particular risk.**" Getz, CCH Prod. Liabl. Rep. at p. 26 (emphasis added). The court, then, upheld summary judgment as the defendants did not have a duty to warn of a risk that the Army was already aware of. Id.

As made clear by the Court of Appeal in Getz, government contractors do not have an obligation to warn the government when the government is aware of the particular hazard. Since

the Navy was aware of the hazards of asbestos prior to 1969, General Dynamics had no duty to warn the Navy at the time of plaintiff's alleged exposure, so the third element of Boyle is met.

F. **The Declarations of Plaintiff Charles Ay and Herman Brush Are Inadmissible**

In an attempt to create evidence where there is none, Plaintiffs submit the declaration of Plaintiff Charles Aikins. Mr. Aikins, contrary to the evidence to date, now states that he was exposed to asbestos aboard ships for which General Dynamics are allegedly responsible, namely the FORT FUHER, the KANSAS CITY, the KILAUEA, and the WICHITA. However, Mr. Aikin's was afforded the opportunity to offer his testimony with respect to these ships at his deposition yet failed to do so. Instead, he offers a sham declaration, after the close of discovery, contradicting his prior testimony so as to save his case from dismissal. Said practice is prohibited. See e.g. Paul Oil v. Federated Mutual Ins. Co., 154 F.3d 1049 (9th Cir. 1998). As such, Mr. Aikin's declaration should not be considered by the court, and, without any evidence of exposure, Plaintiff's claims against General Dynamics should be dismissed. Such as finding makes the declarations of Mr. Ay and Dr. Brusch inadmissible as irrelevant.

Furthermore, the declaration of Charles Ay is also inadmissible as it lacks foundation and his opinions asserted therein are completely speculative; his statements that Plaintiff was exposed to asbestos on ships for which General Dynamics are responsible are based entirely on speculation, not evidence, and cannot be used to defeat General Dynamics motion. See Fed. R. Evid. 403, 701. Specifically, Mr. Ay has no personal knowledge of any work performed by Mr. Aikins with respect to a General Dynamics' ship. Indeed, Mr. Ay relies solely on the sham declaration of Mr. Aikins alone in support of his opinion. There is no indication that Mr. Ay ever read or considered Plaintiff's deposition testimony. Additionally, Mr. Ay did not observe any work that Mr. Aikins performed. Furthermore, there is no foundation for any of Mr. Ay's opinions regarding the repair and maintenance of naval vessels. Mr. Ay is a career insulator who never ever served in the U.S. Navy, nonetheless has any experience similar to Mr. Aikins, but yet, believes he is an expert on testifying about how Mr. Aikins could have been exposed to asbestos asbestos. Mr. Ay is clearly not a naval expert or an industrial engineer. Therefore, any of his opinions, such as his opinion that more likely than not, Mr. Aikins sustained exposure to asbestos

12

fibers as a result of his work aboard General Dynamics' ships are completely lacking in foundation and inadmissible.

///
///
///
///
///

## II. CONCLUSION

General Dynamics has established all of the Boyle elements and plaintiffs have produced no evidence to the contrary. Plaintiffs' claims are barred as a matter of law and summary judgment should be entered in favor of General Dynamics.

Dated: November 21, 2011                    JACKSON JENKINS RENSTROM LLP

                                            By:   /s/ *James J. O'Brien*
                                                  JAMES J. O'BRIEN
                                                  Attorneys for Defendant
                                                  GENERAL DYNAMICS CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4   C:\Documents and Settings\kadonohue\Desktop\reply aikins.DOC
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

The undersigned, counsel for GENERAL DYNAMICS CORPORATION, hereby certifies that a true and correct copy of the foregoing DFENDANT GENERAL DYNAMICS CORPORATION'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT was filed with the Court electronically on November 21, 2011 and made available for viewing and downloading through the CM-ECF (Electronic Case Filing) system to all counsel of record who are registered to receive a Notice of Electronic Filing for this case. This document was served via United States Postal Service regular mail to those counsel of record not registered with CM-ECF on November 21, 2011.

/s/ Keri A. Donohue

Keri A. Donohue

1951878